

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:GKS
F.#2016R00088

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 27, 2017

<u>By Hand and ECF</u>

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Adene Reid</u>
              <u>Criminal Docket No. 16-50 (DLI)</u>

Dear Chief Judge Irizarry:

      On November 1, 2016, the defendant Adene Reid pled guilty pursuant to a plea agreement to Count Two of a three-count indictment. All of the conduct charged in the indictment stems from the January 18, 2016 robbery of an AT&T store located at 1169 Liberty Avenue in Brooklyn, New York. For the reasons set forth below, the government respectfully submits that a sentence within the Guidelines range of 51-63 months' imprisonment with a term of supervised release to follow is sufficient to meet the requirements of 18 U.S.C. § 3553(a).

I.      **<u>Procedural Background</u>**

      In Count One, the defendant was charged with Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a). In Count Two, the defendant was charged with Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). In Count Three, the defendant was charged with brandishing a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c). The defendant is currently scheduled to be sentenced on May 5, 2017 at noon. At that time, and as provided for in the plea agreement, the government will move to dismiss Counts One and Three of the indictment as to this defendant.[1]

      On February 1, 2017, the Probation Department issued a Presentence Investigation Report ("PSR"). On February 10, 2017, the defendant submitted a letter

---

[1]    Co-defendant Charles Thomas is currently awaiting trial.

indicating that he had no objections to the PSR. On February 13, 2017, the government submitted a letter containing its objections to the PSR, which consisted primarily of factual corrections to the offense conduct section of the PSR. On February 15, 2017, the Probation Department issued an addendum to the PSR adopting the government's proposed changes to the offense conduct section and including additional information as to victims and the defendant's employment history. On April 17, 2017, the defendant submitted a two-page sentencing memorandum with attachments, seeking a below-Guidelines sentence of 30 months' imprisonment, if not time served. (Dkt. No. 60 at 2.)

II. **Offense Conduct**

The facts of the defendant's robbery of the AT&T store on Liberty Avenue on January 18, 2016 are not in dispute.[2] (See PSR ¶¶ 3-5; Complaint, Dkt. No. 1.) He was part of a three-person robbery crew that evening. Together with an unapprehended male ("UM"), Reid walked into the store wearing a mask to conceal his identity. At the time that the defendant entered the store, two store employees were sitting together at a desk. The defendant and the UM walked up to them and instructed them to go to the store vault in the back. The defendant knew exactly where the store kept its most valuable merchandise. In the back, a firearm was brandished and the defendant forced a store employee to load cell phones into a bag. The store employee deposited 47 cell phones into the bag.

The robbery took mere minutes and co-defendant Charles Thomas waited nearby in a rented getaway car. One of the cell phones that the defendant stole from the AT&T store was, in fact, a tracker device with location tracking capability. The system automatically alerted the New York City Police Department and officers soon gave chase to the getaway car. The defendant sped through residential neighborhoods to evade capture. Eventually, the getaway car began to smoke and essentially crashed near the corner of Decatur Street and Marcus Garvey Boulevard in Brooklyn – approximately four miles away.

At the time that the getaway car stopped, police officers were moments behind the robbers. The defendant did not surrender. Instead, he and the UM bolted from the vehicle and ran in opposite directions in an apparent hope that there weren't enough officers

---

[2] In his sentencing memorandum, the defendant cites the "seeming paucity of evidence" that the government would have presented at trial. (Dkt. No. 60 at 2.) Indeed, approximately half of the defendant's sentencing memorandum is devoted to characterizing the government's evidence instead of addressing his criminal history or other applicable sentencing factors. The defendant has allocated to the elements of his crime and described his participation in the robbery. Thus, while the government would dispute the defendant's characterization of its evidence, litigating the strength of that evidence is not necessary in light of the plea. Regardless, the government agrees that the defendant deserves credit under the Guidelines and at sentencing for acceptance of responsibility for his crime. As set forth below, however, we submit that his sentence should be driven by all of the applicable sentencing factors without undue weight placed on the fact that he pled guilty.

2

nearby to catch everyone. That plan worked for the UM. The defendant was not so lucky. Surveillance video from a nearby residence and store captured him running from the scene to evade capture. NYPD officers found him near a local residential building less than a block from the getaway car. In an attempted ruse, he advised officers that he lived at that location, but could not tell them the address. He was then arrested.

### III.  **Guidelines Calculation**

The applicable Guidelines calculation is also not in dispute. The government agrees with the Probation Department that the defendant's base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a), and that a five-point upward adjustment is warranted for the brandishing of a firearm, pursuant to U.S.S.G. § 2B3.1(b)(2)(C). The government further agrees that the defendant is entitled to a two-point reduction for acceptance of responsibility per U.S.S.G. § 3E1.1(a) and hereby moves for an additional one-point reduction pursuant to U.S.S.G. § 3E1.1(b). The defendant's adjusted offense level is thus 22 and, with a Criminal History Category of III, his Guidelines range of imprisonment is 51 to 63 months.[3]

### IV.  **Analysis**

The defendant should receive a within-Guidelines sentence of 51 to 63 months' imprisonment with a term of supervised release to follow. A within-Guidelines sentence would be sufficient to comply with the requirements of 18 U.S.C. § 3553(a) and adequately reflect the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for punishment, deterrence and protecting the public from the defendant.

The defendant victimized two cell phone store employees in a gun point robbery,[4] led the police on a car chase through the streets of Brooklyn, fled on foot once the

---

[3] On February 1, 2017, the Probation Department submitted a sentencing recommendation in which it recommended a within-Guidelines sentence of 57 months' imprisonment to be followed by three years' supervised release with special conditions. In support of its recommendation, the Probation Department cited the defendant's three prior convictions, multiple disciplinary infractions while incarcerated and commission of the instant offense a mere four months after his supervised release was revoked. The Probation Department also cited, among other things, the seriousness of the offense as well as the defendant's family history, educational history and lack of a committed employment history.

[4] The government has provided mandatory victim notification. However, neither the government nor the Probation Department is aware of any monetary losses or injuries for which the employee-victims are seeking restitution. (See PSR ¶ 73.) Neither AT&T nor another corporate entity has made a request for restitution. The government is thus not seeking an award of restitution. The government further notes that, while the defendant was provided notice of potential criminal forfeiture proceedings in the indictment, the stolen cell phones were recovered from the getaway car and the defendant was arrested shortly after the incident. The government is thus not seeking a monetary award of

getaway car stopped and then attempted to hide from police officers to evade capture. The defendant's actions were malicious and dangerous. When he entered the AT&T store, the defendant gambled that the store was a soft target and that he could easily escape wearing a mask and with a getaway driver nearby. Once the tracker device alerted law enforcement officers to the robbery, the defendant had two choices: submit to lawful authority or flee, hoping that the police would lose all of the robbers on the crowded streets of Brooklyn. He and his co-conspirators fled. When the getaway car stopped, the defendant again chose to run, perhaps wagering that the police would catch the other robbers and miss him. Each of the defendant's gambles only increased the danger to himself and to others. That no one was hurt during the robbery or the getaway is a small miracle given the inherent dangers posed by the use of firearms to commit crimes of violence and the defendant's flight to evade capture. The government submits that, although the victims were thankfully not physically injured, the defendant's conduct was nonetheless dangerous and a within-Guidelines sentence would adequately address the nature and seriousness of his conduct.

    Furthermore, a within-Guidelines sentence would account adequately for the history and characteristics of the defendant. The defendant has committed a series of escalating crimes since the age of 18 that demonstrate his utter lack of respect for the law and the danger he poses to the community. In April 2007, he was convicted for the unauthorized use of a motor vehicle. Notably, he failed to appear for the proceedings and a bench warrant was issued for his arrest in June 2007. (PSR ¶ 23.) At the age of 19, he was stopped in a car and found in possession of marijuana. (PSR ¶ 24.) And then, less than a year later, he was sentenced to 70 months' custody by the United States District Court for the District of Vermont for conspiracy to distribute cocaine. (PSR ¶ 25.) The sentence he received was nearly 100 months below the bottom end of the Guidelines range.[5] The defendant squandered that windfall while on supervised release. He tested positive for marijuana 14 times and failed to comply with various conditions of his release. (PSR ¶¶ 25, 48.) While still on supervision, he was arrested in March 2015, failed to notify his Probation Officer of the request and left the jurisdiction without permission.[6] He was sentenced to one month in custody in September 2015 and no new term of supervision was ordered. Again, the defendant received a windfall that he squandered: a mere four months after his release, he committed the instant offense.

---

forfeiture. The PSR notes that the defendant is required to forfeit the firearm used in this case pursuant to 18 U.S.C. § 924(d). The defendant, however, was not in possession of the firearm at the time of his arrest and the firearm has not been recovered subsequently. There is thus no physical firearm to forfeit at present.

  [5] While serving this sentence, the defendant incurred multiple infractions in prison. (PSR ¶ 25.) He also has one disciplinary incident during his current period of incarceration. (PSR ¶ 42.)

  [6] The charges underlying the supervised release violation, which pertain to the use of fraudulent credit cards, were eventually dismissed. (PSR ¶ 31.)

4

The defendant's criminal history shows that, but for a period of approximately a year and three months between the commencement of his supervised release on December 11, 2013 and his March 2015 arrest, the surest way to protect the public from the defendant has been to incapacitate him in prison.[7] And his criminal activity has only escalated. He has graduated from drug possession to a federal conviction for drug dealing to a gun point robbery. A lengthy prison term is necessary to address this criminal history, provide specific deterrence and protect the public.

The defendant's history and circumstances further undermine his plea for leniency. (Dkt. No. 60 at 3-5.) He mentions a "very lucrative job doing construction" and that the "put [his] heart into [his] work." (Id. at 4.) Yet, the addendum to the PSR states that the he was never an employee of the construction company. (Addendum to PSR at 2.) From 2009-2015 (a period that includes his federal custody), he was unemployed. Yet, he reported making money by participating in "street activities." (PSR ¶ 52.) When pressed by the Probation Department for details, he declined to provide them. While there is no further detail in the PSR or in the possession of the government about this period of time, the Court can reasonably infer that the defendant was obliquely referring to criminal activity, possibly activity for which he was never caught, or other illegitimate means of earning money. The presentence interview with the Probation Department is a chance for a defendant to provide the Court with as much information as possible to demonstrate his honesty, truthfulness and willingness to lay his life's story before the Court. The defendant apparently could not bring himself to be completely forthcoming even for this purpose.

The defendant's criminal history, personal circumstances and the need to protect the public weigh heavily in favor of a substantial criminal sentence.

V. **Conclusion**

For the reasons set forth below, a within-Guidelines sentence is an appropriate punishment in this case. The defendant has not identified any persuasive factors that would warrant a departure or variance from the applicable Guidelines range. He says that he is a

---

[7] His record of convictions is augmented by a long string of arrests. As set forth in the PSR—with no objection from the defendant—he apparently has lied to police officers, had bench warrants issued for his arrest and driven a car while his license was suspended. (PSR ¶¶ 29-33.) The narratives in the PSR accompanying these arrests further demonstrate the defendant's lack of respect for the law and the need for a stern sentence to provide specific deterrence and protect the public.

changed man who can contribute to society.  He should have that opportunity in the future.  But he should first serve a lengthy term in prison, pursuant to § 3553(a), to address his serious crime and long history of escalating criminal activity.

          Respectfully submitted,

          BRIDGET M. ROHDE
          Acting United States Attorney

By:    /s/ G. Karthik Srinivasan
          G. Karthik Srinivasan
          Assistant U.S. Attorney
          (718) 254-6013

cc: B. Alan Seidler, Esq. (via ECF and Email)